## Case No. 3,716.
### DE BRUNS v. LAWRENCE.
### LAWRENCE v. The LIEUTENANT ADMIRAL CALLOMBERG.

[18 How. Pr. 141;[1] 16 Leg. Int. 324.]

Circuit Court, S. D. New York. Sept. 22, 1859.[2]

·SHIPPING—POWER AND DUTIES OF MASTER—PERISHING CARGO.

1. The master of a vessel is quasi agent for both parties (owner or consignee of the cargo and the owner of the vessel), in respect to the cargo found in a perishing condition on board the ship; and his acts, honestly put forth in an emergency, even if not the most suitable and well judged, with the intent to the best interests of all concerned, are to be indulgently considered.

2. This principle applied to this case, where a cargo of fruit, from Palermo, arrived in New York in a damaged and perishing condition, in consequence of inherent decay, by reason of a long voyage caused by storms and putting in for repairs, &c., which was alleged to have been unnecessarily protracted by the master, and in his unskilful management of the cargo.

[See note at end of case.]

[These were suits in admiralty by De Bruns against John J. Lawrence, and by John J. Lawrence against the brig Lieutenant Admiral Callomberg. The bill against the brig was dismissed in the district court (see Case No. 8,139), and a decree for freight was entered on the libel of De Bruns against Lawrence.]

Owen & Vose, for the Lieutenant Admiral Callomberg.

Beebe, Dean & Donohue, for John J. Lawrence.

NELSON, Circuit Justice. The first of these suits was brought to recover freight on a shipment of fruit, from Palermo to New York, in the brig Lieutenant Admiral Callomberg; the second, a cross-suit by the consignee, to recover for damages to the fruit in the course of the voyage.[3] The bill of lading contained the usual exceptions—damages of the sea, &c., and also from the liability to inherent decay. The brig sailed from Palermo on the 16th of December, 1855, and arrived at New York on the 20th of May, 1856, after a passage of over seventy days. She encountered a storm on the voyage, and was compelled to bear away to the port of Lisbon, in Portugal, for repairs, where she was delayed some forty-seven days in refitting, and where a survey of a portion of the fruit which was perishable (700 boxes of lemons and 2,150 boxes of oranges) was directed, and which were all discharged from the ship, and placed in a well ventilated warehouse on shore. The boxes were opened and examined, and the fruit found to be decaying. The unsound were separated from the sound, and then repacked with care. A quantity equal to 414 boxes of the lemons and oranges was found to be so far decayed as to be worthless—the greater proportion oranges. On the arrival of the ship at this port, almost all of them, however, were in a very damaged condition. It is not denied on the part of the counsel for the consignee, but that the damage was occasioned by the natural and internal decay of the articles, but it is insisted that the fault of the master in the course of the voyage contributed to this damage.

(1) It is insisted, that the length of time occupied in making the repairs at Lisbon was unnecessary and unreasonable, and that this delay was occasioned by the carelessness and want of energy and activity of the master, and that it contributed to the damage of the fruit; and (2) that the opening of the boxes of fruit at Lisbon, and the handling of it, in separating the sound from the unsound and repacking the same, had a tendency to increase the decay of the article, and manifested a want of proper skill in taking care of the fruit in the course of the shipment, and contributed to the damage. The court below overruled these positions, and held upon the proofs that the master had not been guilty of any culpable omission of duty in the voyage, which caused the loss or deterioration of the fruit, or that the delay of the vessel in Lisbon, where she put in for repairs, beyond the time reasonably required to obtain them,

---

[1] [Reported by Nathan Howard, Jr., Esq.]

[2] [Affirmed in Case No. 8,139.]

[3] [This statement of the facts in relation to the bringing of the libel and cross-libel differs from that made in the opinion of the supreme court, deciding the case on appeal. 1 Black (66 U. S.) 170. It is there said, per Mr. Justice Clifford: "Both of the suits were founded upon the same transaction, and depend substantially upon the same facts. One was a suit in rem against the brig L. A. Collenberg, brought by the appellant, in which it was alleged that certain merchandise, consigned to the libelant, was shipped at the port of Palermo, on the 12th day of December, 1855, on board the brig, in good order and condition; and that the master signed bills of lading; agreeing to deliver the same, in like good order and condition, to the libelant at the port of New York; and the charge in the libel was, that he had failed to deliver seven hundred boxes of lemons, and two thousand one hundred and fifty boxes of oranges, constituting a large portion of the cargo. Service of the process was waived, and the claimant of the brig appeared, and, by consent, entered into stipulation, both for the costs of the suit and the value of the vessel. They also made answer to the suit, denying the allegations of the libel, and averring that the merchandise mentioned in the bill of lading, except four hundred and fourteen boxes of lemons and oranges, which perished from their own inherent tendency to decay, had been duly transported and delivered to the libelant in like good order and condition as when laden on board, saving only the damage occasioned by the perils of the seas, and such as resulted from the natural decay of the fruit. On the 2d day of July, 1856, they also filed a cross-libel against the appellant, as consignee of the cargo, to recover the freight for the transportation of the same, in which they alleged that they had fully performed the contract set forth in the bill of lading, and were entitled to have and receive of the respondent, for the freight and primage, including charges, the sum of $2,862.47."]

was the immediate or proximate cause of the injuries the fruit had sustained, and that it being proved that the efforts of the master in Lisbon to preserve the fruit were made in good faith, and under the advice of experienced and competent persons, and according to the best judgment of the master, the vessel was not responsible for the injuries the fruit received, even if the means used to save it were not the most suitable and well judged; the master was quasi agent for both parties in respect to the cargo found in a perishing condition on board of his ship; and his acts, honestly put forth in the emergency, with the intent to the best interests of all concerned, are to be indulgently considered.

We have looked into the evidence in this case, and although it is contradictory, and, in respect to the time consumed in the repairs at Lisbon, not very satisfactory, we think the weight of it sustained the view of the court below. We admit it is difficult to understand or believe that some three weeks should be consumed at Lisbon in refitting the vessel, when the work could have been done in this port in as many days. And the evidence returned to the commissioner executed in Lisbon explains it fully, not, however, in a manner very creditable to the character or enterprise of the government of Portugal. We are satisfied that the decrees of the court below are right, and should be affirmed.